TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — **OTHER**

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No. 1781CV00775

Stephen Sullivan, Plaintiff(s)

v.

Donald J. Trudeau, et al., Defendant(s)

A TRUE COPY ATTEST
JOSEPH P. PURCELL
CT. STATE MARSHAL
FAIRFIELD COUNTY

### SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon Maura Greene, Esq. of Law Office of Maura Greene, LLC plaintiff's attorney, whose address is 6 Beacon St., Suite 205, Boston, MA 02108, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Middlesex County Superior Court, 200 Trade Center, 2nd Floor, Woburn, MA 01801, either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, **Judith Fabricant**, Esquire, at Woburn the 7th day of April, in the year of our Lord 2017.

Clerk

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT DEPARTMENT
FOR THE TRIAL COURT
Civ. A. No. 1781 CV00775

STEPHEN SULLIVAN

        Plaintiff,

v.

MARK A. MUSSER, DONALD J. TRUDEAU,
CABOT UNDERWRITERS, LLC, individually

        Defendants.

## COMPLAINT

### I. INTRODUCTION

1. Plaintiff Stephen Sullivan brings this action against his former employer, Cabot Underwriters, LLC ("Cabot Underwriters"), its president, chief executive officer, manager and treasurer, Mark A. Musser, and its co-owner, agent and manager, Donald J. Trudeau, for non-payment of earned wages and benefits in violation of state law, breach of contract for non-payment of wages, non-payment of benefits, allowing company-sponsored healthcare coverage to lapse, unreimbursed healthcare costs, and unreimbursed expenses, and similar damages and unjust enrichment.

2. In this action, Mr. Sullivan seeks to recover all unpaid wages, unpaid benefits, healthcare costs that arose from not being insured, reimbursement for healthcare costs, reimbursement for expenses, as well as treble damages, interest, costs and attorneys' fees, damages that resulted from the Defendants' conduct, in addition to such other relief that is deemed equitable and just.

1

## II. PARTIES

3. Stephen Sullivan is an adult resident of Hopkinton, Middlesex County, Massachusetts.

4. Defendant Cabot Underwriters, LLC ("Cabot Underwriters") is a foreign limited liability company registered in the state of Florida with its principle place of business located at 300 First Avenue South, Suite 406, St. Petersburg, Florida, 33701.

5. Defendant Mark A. Musser is the president, chief executive officer, manager and treasurer of Cabot Underwriters and resides at 6225 Pasadena Point Blvd. South, Gulfport, Florida 33707.

6. Defendant Donald J. Trudeau is a co-owner, agent and manager of Cabot Underwriters and resides at 1061 King Street, Greenwich, Connecticut 06831.

7. Upon information and belief Mr. Trudeau is a co-owner of Cabot Underwriters and holds a 48.00% interest in the company.

## III. JURISDICTION

8. This Court has jurisdiction to address this matter pursuant to, *inter alia*, M.G.L. c. 149 §§ 148, 150 and its common law authority.

9. Mr. Sullivan has received a private right of action letter from the Massachusetts Attorney General pursuant to M.G.L. c. 149 § 150.

10. This Court has personal jurisdiction over Cabot Underwriters, Mr. Musser and Mr. Trudeau pursuant to, *inter alia*, M.G.L. c. 223A § 3.

11. Cabot Underwriters, Mr. Musser and Mr. Trudeau transacted business in Massachusetts pursuant to M.G.L. 223A § 3(a).

12. Cabot Underwriters, Mr. Musser and Mr. Trudeau contracted to supply services or things in Massachusetts pursuant to M.G.L. 223A § 3(b).

## IV   FACTS

13. Cabot Underwriters is a full service Managing General Underwriter and is described as: "[S]pecializing in medical stop loss coverages for self-insured groups. Supported by a culture of innovation, problem solving, and collaboration, Cabot provides comprehensive solutions to policyholders and their advisors."[1]

14. On or about February 9, 2015 Cabot Underwriters hired Mr. Sullivan as an underwriter.

15. Cabot Underwriters agreed to pay Mr. Sullivan an annual salary of $87,500.00. Beginning on April 1, 2015, he would be paid on the 15th and 28th of each month by direct deposit and would receive a bonus of $10,000.00 on February 15, 2016. Mr. Sullivan's annual salary would increase to $100,000.00 commencing on January 1, 2016.

16. Cabot Underwriters further agreed to pay Mr. Sullivan's health insurance premiums in the amount of $1,500.00 per month and to provide healthcare coverage for Mr. Sullivan and his family.

17. Mr. Sullivan began working for Cabot Underwriters on or about April 1, 2015.

18. Mr. Sullivan worked remotely for Cabot Underwriters from his home office in Massachusetts.

---

[1] See http://cabotuw.com/index.html

19. Commencing on or about April 1, 2016 Cabot Underwriters failed to pay Mr. Sullivan his earned wages.

20. When Mr. Sullivan complained of his lack of payment, Cabot Underwriters made sporadic wire transfers to Mr. Sullivan equal to his net take home pay after all usual and customary taxes and deductions.

21. Cabot Underwriters withheld for itself, and did not pay, sums that typically are withheld and paid for federal and state incomes taxes, Mr. Sullivan's portion of Social Security, Medicare and similar deductions.

22. Cabot Underwriters made approximately seven (7) wire transfers to Mr. Sullivan in amounts equal to his net take home pay as described above.

23. Mr. Sullivan incurred a $10.00 charge for each wire transfer payment made by Cabot Underwriters. In total Mr. Sullivan incurred $70.00 in wire transfer fees.

24. Cabot Underwriters wired Mr. Sullivan his net take home pay as described-above for the period from April 1, 2016 through July 15, 2016.

25. Mr. Sullivan incurred a $33.00 over-draft charge related to a late mortgage payment because he did not receive a timely paycheck from Cabot Underwriters.

26. Starting on July 15, 2016 Cabot Underwriters stopped paying Mr. Sullivan his earned wages all together although Mr. Sullivan remained employed by, and continued to perform work for, Cabot Underwriters.

27. Mr. Sullivan worked for Cabot Underwriters without compensation from July 15, 2016 through September 30, 2016 when he ultimately resigned because he was not being paid.

28. During the period from April, 2016 through the present Mr. Sullivan emailed Mr. Musser on numerous occasions regarding not being paid and the cancellation of his health

insurance. Mr. Musser would respond with excuses as to why Cabot Underwriters had not paid Mr. Sullivan and with assurances that payment and health insurance coverage would be forthcoming. Below is a summary of some, but not all, of the emails sent by Mr. Musser regarding the lack of health insurance coverage and unpaid wages:

29. On or about April 22, 2016 Mr. Musser emailed Mr. Sullivan, Mr. Trudeau and other employees and stated in part: "The latest payroll update is that we have a saga, much like we had with Paychex and the health insurance coverage...With that in mind, I'd encourage you to get me some bank account info so that we can wire funds to you, a little later in the day."

30. On or about April 26, 2016 Mr. Musser emailed Mr. Sullivan and stated in part: "Short answer is because of lack of coordination between providers of working capital and chunkiness of Paychex.......can I leave it at that for now??"

31. On or about July 5, 2016 Mr. Musser emailed Mr. Sullivan, Mr. Trudeau and other employees and stated in part: "Payroll should be out to you all today; funding is ready, and per my email last week I thought we'd have that to you prior to the July 4th holiday, but should be out by mid-day to early afternoon. Had some logistics that we couldn't overcome on Friday........"

32. On or about July 15, 2016 Mr. Musser emailed Mr. Sullivan, Mr. Trudeau and other employees and stated in part: [T]he latest cash infusion will be hitting our account on Monday, and we will be getting payroll amounts out to you on Monday afternoon."

33. On or about July 19, 2016 Mr. Musser emailed Mr. Sullivan, Mr. Trudeau and other employees and stated in part: "Morning, and by now you've probably realized that we didn't make the payroll process yesterday afternoon.....apologies for the continued

discontinuity in this process. We're trying to get payroll amounts out to you yet this afternoon, and I'll keep you posted. Thanks again for your patience…..we're close to getting this all fixed."

34. On or about July 19, 2016 Mr. Musser drafted a second email to Mr. Sullivan, Mr. Trudeau and other employees and stated in part: "We didn't get this out today, but we've got a very realistic shot of executing tomorrow. Don [Trudeau] and I are focusing on cash flow and financing tomorrow every first thing. We should have operational cash coming into Cabot by mid to late morning, and I'll turn it around just as quickly as possible…."

35. On or about July 22, 2016 Mr. Musser emailed Mr. Sullivan stated in part: "Still waiting for cash from the mother ship…….may still be able to turn something around….will let you know if we were able to get something out today."

36. On or about July 28, 2016 Mr. Musser emailed Mr. Sullivan, Mr. Trudeau and other employees and stated in part: "Don [Trudeau] wasn't able to turn cash for us today, but it will begin to fund in the next couple of business days…Payroll update – So, we missed Monday, and the rest of the week thus far on payroll, but shall have the July 15th payroll to you either tomorrow or Monday at the latest. Payroll Update #2 – we would expect to have the July 31st payroll to you on either Tuesday or Wednesday of next week….just a matter of turnaround times at this point."

37. On or about or about August 3, 2016 Mr. Musser emailed Mr. Sullivan, Mr. Trudeau and other employees and stated in part: "Most importantly is payroll……..''when are we going to get paid"??!!~#%&$&……We're fully expecting to turn around the complete July payment amounts, tomorrow, Thursday. Don [Trudeau] felt that we should have had funding today, but alas, did not. We're continuing to chase that for a turnaround

tomorrow, and clearly understand that angst, back payments and spousal agita that this has created. We're working to get this cleaned up once and for all."

38. On or about August 5, 2016 Mr. Musser emailed Mr. Sullivan and stated in part: "Hi Steve...cash is moving around today on several fronts as we attempt to catch up...."

39. On or about August 17, 2016 Mr. Musser emailed Mr. Sullivan, Mr. Trudeau and other employees and stated in part: "[W]e fully expect to begin funding/releasing many of our open items, including payroll, yet today...So, continued thanks for your patience and enduring spirit. We clearly understand mortgage payments, car payments, and all of those types of things and the stress with your families that this has caused, so we're looking to relieve that stress as quickly as possible."

40. On or about August 22, 2016 Mr. Musser emailed Mr. Sullivan, Mr. Trudeau and other employees and stated in part: "Overall cash is beginning to move, firstly from the internal funding that Dong has with TPG. Those funds are moving this week. We're moving towards the loan/line amounts that we have with Bankwell...No B/S, no stringing along, the cash is moving...Payroll amounts will be to you today/tomorrow.......there is no attempt to discount, not pay, flee or avoid any of those amounts."

41. On or about August 26, 2016 Mr. Musser emailed Mr. Sullivan, Mr. Trudeau and other employees and stated in part: "So, the brief story is that Don [Trudeau] is continuing to press for the release of funds for payroll and other expenses, but that may still not happen yet today. We're coming up on the 4:30 end of day wire transfer deadline for today. I know that you all are apoplectic at this point, you've heard this song before, but there is progress that Don [Trudeau] is moving with this tranche of funds. There is a chance for

funding to hit yet hit today, but it may not get out to you all this afternoon. Monday is not best estimate, but Don will speak to that."

42. On or about September 5, 2016 Mr. Musser emailed Mr. Sullivan and stated in part: "Don [Trudeau] indicated that funds would begin to move (and this time with certainty tomorrow, Tuesday. This includes the health premium, payroll amounts, our operational items, and the like. Don [Trudeau] made the commitment over the phone with Dan, Alex, Terri, me & Jess on the call, and his confidence level was high. So, I'm expecting movement of funds…may not take place very first thing, but should be coming mid-day or so."

43. On or about September 9, 2016 Mr. Musser emailed Mr. Sullivan and stated in part: "I'm sorry……I've been after Don [Trudeau] all day, and will let you know something either later today or tomorrow."

44. On or about September 16, 2016 Mr. Musser emailed Mr. Sullivan and stated in part: "So, Don [Trudeau] reports that he'll now have, with complete certainty, his wire transfer/settlement in on Monday of next week. He'll turn it around to us as quickly as he can, and we'll in turn get it out to you…"

45. On or about September 19, 2016 Mr. Musser emailed Mr. Sullivan, Mr. Trudeau and other employees and stated in part: "So, we're still working on coverage to backdate to either 8/1 or 9/1, and Don [Trudeau] is pretty confident that through their national contacts, they can lock this in for us either today or tomorrow."

46. On or about September 22, 2016 Mr. Musser emailed Mr. Sullivan, Mr. Trudeau and other employees and stated in part: "We're continuing to work on a plan for reimbursing

your health costs for August & September that should have been covered by the UHC plan. I'll let you know that shortly."

47. On or about October 22, 2016 Mr. Musser emailed Mr. Sullivan and Donald Trudeau and stated in part: "While we won't have prior amounts to you on Monday, we're continuing to work cash and financing, such that we can deliver expense account amounts, and at least one payroll sometime next week. I know that's not definitive, but Don [Trudeau] continues to work on funding from available sources, as well as additional sources."

48. On or about January 9, 2017 Mr. Musser emailed Mr. Sullivan and stated in part: "W-2 reporting dates must be postmarked by January 31st, which we shall do, and send to your home. Still working on the funding issues, and will keep you posted once we have something locked in and secure."

49. On or about February 9, 2017 Mr. Sullivan was able to access his 2016 W-2 through Paychex, Inc.

50. Mr. Sullivan's 2016 W-2 was incorrectly prepared. Mr. Sullivan's gross wages and withholdings were incorrectly calculated. Mr. Sullivan is due and owed five (5) weeks of net pay which amounts to approximately $15,387.00 but only three (3) weeks of withholdings which amounts to approximately $3,267.81.

51. Mr. Trudeau is a co-owner, agent and manager of Cabot Underwriters and he determined which of Cabot Underwriters' creditors, including employees, would be paid.

52. Mr. Trudeau oversaw Cabot Underwriters payroll and finances.

53. Mr. Musser and Mr. Trudeau are personally liable under M.G.L. c. 149 § 148 for Cabot Underwriters' failure to properly pay Mr. Sullivan his earned wages.

54. During the summer / fall, 2016 Cabot Underwriters stopped paying Mr. Sullivan's health insurance premiums without any notice or warning. As a result Mr. Sullivan and his family became uninsured as of August 1, 2016.

55. As a result of being uninsured, Mr. Sullivan incurred approximately $3,492.85 in uninsured medical expenses and costs related to a medical procedure for his wife.

56. Additionally, Cabot Underwriters failed to pay Mr. Sullivan approximately $162.38 in unreimbursed expenses.

57. Cabot Underwriters has repeatedly promised to pay Mr. Sullivan his unpaid wages, benefits, reimbursement for allowing healthcare coverage to lapse, reimbursement for healthcare costs, unreimbursed expenses and similar wages and expenses, but has failed to do so.

58. Mr. Sullivan anticipates that he will incur approximately $5,000.00 in expenses and associated penalties due to Cabot Underwriters failure to properly retain and pay appropriate payroll taxes and deductions.

59. Mr. Sullivan currently calculates his damages in unpaid wages, benefits, uninsured healthcare costs, healthcare expenses, unreimbursed expenses and similar wages and expenses at approximately $27,413.04.

## V. CAUSES OF ACTION

### COUNT I

### NON-PAYMENT OF WAGES IN VIOLATION OF M.G.L. c. 149 §§ 148, 150

60. Mr. Sullivan hereby realleges and incorporates by reference the facts and allegations contained in the preceding paragraphs of this pleading as if fully set forth herein.

61. Cabot Underwriters, Mr. Musser and Mr. Trudeau failed to pay Mr. Sullivan the full amount of his earned wages, including without limitation salary wages, benefits, health insurance coverage, healthcare costs, expenses and similar wages and expenses, the same became due and payable.

62. Cabot Underwriters, Mr. Musser and Mr. Trudeau violated Massachusetts Wage Laws, M.G.L. c. 149 §§ 148, 150.

63. Mr. Sullivan filed a complaint with the Massachusetts Attorney General pursuant to M.G.L. c. 149, § 150.

64. Cabot Underwriters, Mr. Musser and Mr. Trudeau's failure to comply with M.G.L. c. 149 § 148, 150 entitles Mr. Sullivan to recover treble damages, interest, reasonable attorney's fees and costs pursuant to M.G.L. c. 149 § 150.

### COUNT II

### BREACH OF CONTRACT

65. Mr. Sullivan hereby realleges and incorporates by reference the facts and allegations contained in the preceding paragraphs of this pleading as if fully set forth herein.

66. Cabot Underwriters, Mr. Musser and Mr. Trudeau and Mr. Sullivan were parties to a contract under which Cabot Underwriters, Mr. Musser and Mr. Trudeau had a duty and agreed to pay Mr. Sullivan wages and benefits including, without limitation, salary wages, benefits, health insurance, healthcare costs, expenses and similar wages and expenses.

67. Cabot Underwriters, Mr. Musser and Mr. Trudeau breached their contractual duty by failing to pay Mr. Sullivan the wages, benefits, health insurance, healthcare costs, expenses and similar wages and expenses. due to him pursuant to the terms of the contract.

68. Cabot Underwriters, Mr. Musser and Mr. Trudeau's breach was material.

69. Cabot Underwriters, Mr. Musser and Mr. Trudeau's breach was both the proximate and actual cause of Mr. Sullivan's damages.

70. Cabot Underwriters, Mr. Musser and Mr. Trudeau's breach of contract entitles Mr. Sullivan to recover his contract damages including but not limited to, incidental and consequential damages, and pre-judgment interest from the date of the breach.

## COUNT III
### UNJUST ENRICHMENT

71. Mr. Sullivan hereby realleges and incorporates by reference the facts and allegations contained in the preceding paragraphs of this pleading as if fully set forth herein.

72. Cabot Underwriters, Mr. Musser and Mr. Trudeau received the benefit of Mr. Sullivan's time, work and professional skill without compensating him for the same.

73. Cabot Underwriters, Mr. Musser and Mr. Trudeau were unjustly enriched by the amount of the unpaid wages as well as any profits they have made as a result of the Mr. Sullivan's work.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all claims.

WHEREFORE, Plaintiff respectfully requests that the Court enter the following relief:

1. An award of damages for unpaid earned compensation due to Plaintiff;
2. All damages for Defendants' breach of contract;
3. Equitable relief and/or disgorgement for the Defendants' unjust enrichment;
4. Statutory trebling of all wage-related damages;
5. Attorneys' fees and costs;
6. Pre- and post-judgment interest; and
7. Any other relief which this Court deems appropriate.

Respectfully submitted,
Stephen Sullivan,
By his attorney

Maura Greene (BBO #547204)
LAW OFFICE OF MAURA GREENE, LLC
Six Beacon Street, Suite 205
Boston, MA 02108
Tel.   (617) 936-1580
maura@mauragreenelaw.com

Dated: March 7, 2017