UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| STEPHEN SULLIVAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 1:17-cv-11604-JGD |
| MARK A. MUSSER, DONALD J. TRUDEAU, | ) |
| CABOT UNDERWRITERS, LLC, individually | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff, Stephen Sullivan ("Mr. Sullivan" or "Plaintiff"), through the undersigned counsel, submits the following First Amended Complaint pursuant to Fed. R. Civ. P. 15(a), and states as follows:

## I.  INTRODUCTION

1. Plaintiff, Stephen Sullivan brings this action against his former employer, Cabot Underwriters, LLC ("Cabot Underwriters"), its president, chief executive officer, manager and treasurer, Mark A. Musser, and its co-owner, agent and manager, Donald J. Trudeau, for non-payment of earned wages, compensation and benefits, non-payment of business costs and expenses, non-payment and coverage of health insurance, non-payment of health care costs and expenses, non-payment of appropriate taxes, deductions and withholdings, and similar non-payment of wages, compensation and benefits, lost wages, in violation of state law, breach of contract for non-payment of earned wages, compensation and benefits, non-payment of business

1

costs and expenses, non-payment and coverage of health insurance, non-payment of health care costs and expenses, non-payment of appropriate taxes, deductions and withholdings, and similar non-payment of wages, compensation and benefits, allowing company-sponsored healthcare coverage to lapse, unreimbursed healthcare costs, and unreimbursed costs and expenses, and similar damages and unjust enrichment.

2. In this action, Mr. Sullivan seeks to recover all unpaid wages, unpaid benefits, unpaid compensation, reimbursement for healthcare costs and expenses that arose from not being insured, reimbursement for healthcare costs and expenses, reimbursement for business costs expenses, reimbursement for non-payment of appropriate taxes, deductions and withholdings, lost wages, as well as treble damages, interest, costs and attorneys' fees, all statutory relief and damages, damages that resulted from the Defendants' conduct, in addition to such other relief that is deemed equitable and just.

## II. PARTIES

3. Stephen Sullivan is an adult resident of Hopkinton, Middlesex County, Massachusetts. Mr. Sullivan resided and worked in Massachusetts during his employment at Cabot Underwriters, LLC.

4. Defendant Cabot Underwriters, LLC ("Cabot Underwriters") is a foreign limited liability company registered in the state of Florida with its principal place of business located at 300 First Avenue South, Suite 406, St. Petersburg, Florida, 33701. Cabot Underwriters formerly conducted business as The McGuire Group Medical Stoploss Underwriters, LLC a.k.a. The McGuire Group, LLC, a limited liability company organized under the laws of Delaware.

5. Defendant Mark A. Musser is the president, chief executive officer, manager and treasurer of Cabot Underwriters and resides at 6225 Pasadena Point Blvd. South, Gulfport, Florida 33707.

6. Defendant Donald J. Trudeau is a co-owner, agent and manager of Cabot Underwriters and resides at 1061 King Street, Greenwich, Connecticut 06831.

7. Upon information and belief Mr. Trudeau is a co-owner of Cabot Underwriters and holds a 48.00% interest in the company.

8. Upon information and belief Mr. Musser and Mr. Trudeau each control, direct and participate to a substantial degree in formulating and determining the financial policy of Cabot Underwriters.

9. The Defendants employed Mr. Sullivan.

### III. JURISDICTION

10. This Court has jurisdiction to address this matter pursuant to, *inter alia,* M.G.L. c. 149 §§ 148, 150, the Massachusetts Wage Act, and its common law authority.

11. Mr. Sullivan has received a private right of action letter from the Massachusetts Attorney General pursuant to M.G.L. c. 149 § 150.

12. This Court has personal jurisdiction over Cabot Underwriters, Mr. Musser and Mr. Trudeau pursuant to, *inter alia,* M.G.L. c. 223A § 3.

13. Cabot Underwriters, Mr. Musser and Mr. Trudeau transacted business in Massachusetts pursuant to M.G.L. c. 223A § 3(a).

14. Cabot Underwriters, Mr. Musser and Mr. Trudeau contracted to supply services or things in Massachusetts pursuant to M.G.L. c. 223A § 3(b).

15. Venue is appropriate under M.G.L. c. 223.

## IV. FACTS

16. Cabot Underwriters is a full service Managing General Underwriter and is described as: "[S]pecializing in medical stop loss coverages for self-insured groups. Supported by a culture of innovation, problem solving, and collaboration, Cabot provides comprehensive solutions to policyholders and their advisors." (See http://cabotuw.com/).

17. In late 2014 / early 2015, Mr. Sullivan heard that Mr. Musser was looking to hire an underwriter for Cabot Underwriters. Mr. Sullivan called Mr. Musser in Florida from Massachusetts and over the next few weeks the two negotiated the scope of Mr. Sullivan's employment over numerous telephone calls, emails and communication while Mr. Sullivan was in Massachusetts. During this period, Mr. Musser and Mr. Sullivan each initiated calls to the other. The two exchanged emails and Mr. Musser mailed Mr. Sullivan an offer letter in Massachusetts. On or about February 9, 2015 Mr. Musser hired Mr. Sullivan as an underwriter for Cabot Underwriters.

18. In summary, Cabot Underwriters agreed to pay Mr. Sullivan an annual salary of $87,500.00. Beginning on April 1, 2015, he would be paid on the 15th and 28th of each month by direct deposit and would receive a bonus of $10,000.00 on February 15, 2016. Mr. Sullivan's annual salary would increase to $100,000.00 commencing on January 1, 2016.

19. In summary, Cabot Underwriters further agreed to pay Mr. Sullivan's health insurance premiums in the amount of $1,500.00 per month and to provide healthcare coverage for Mr. Sullivan and his family.

20. Mr. Sullivan began working for Cabot Underwriters on or about April 1,

2015. During periods when Cabot Underwriters paid Mr. Sullivan, they would make direct deposits into Mr. Sullivan's account at his bank in Massachusetts.

21. Mr. Musser directed Mr. Sullivan to work for Cabot Underwriters out of Mr. Sullivan's home in Massachusetts. Mr. Musser mailed to Mr. Sullivan's home in Massachusetts office supplies and equipment so that Mr. Sullivan could work for Cabot Underwriters from his home. Mr. Musser mailed Mr. Sullivan a computer, a printer and a monitor. Mr. Sullivan worked remotely for Cabot Underwriters from his home office in Massachusetts throughout his employment.

22. During Mr. Sullivan's employment at Cabot Underwriters, he purchased various work-related items, including without limitation, printer ink, a filing cabinet, and similar office supplies. He made these purchases from Staples or OfficeMax stores in Massachusetts. Cabot Underwriters and Mr. Musser previously reimbursed Mr. Sullivan for such work-related expenses, although Mr. Sullivan currently has various outstanding work-related expenses and costs for which he is seeking reimbursement in this lawsuit.

23. Mr. Musser further emailed Mr. Sullivan in Massachusetts various tax forms and health insurance enrollment forms so that Mr. Sullivan could begin his employment for Cabot Underwriters.

24. Mr. Sullivan's employment for Cabot Underwriters included, in part, receiving and evaluating requests from 3rd party administrators or brokers for medical stop-loss insurance coverage. In summary, Mr. Sullivan would process their requests through Cabot Underwriters' rating module on the company computer and software from his home office in Massachusetts, and if it appeared to be a good fit, Mr. Sullivan would send the information back to the 3rd party administrator or broker and they would present this quote to their employer. If the employer accepted Cabot Underwriters' quote, Mr. Sullivan would continue to work with the 3rd party administrator or broker. Mr. Sullivan performed all this work from his home office in

Massachusetts. Mr. Sullivan communicated with 3rd party administrators and brokers through email and telephone from Massachusetts.

25. Mr. Sullivan communicated with 3rd party administrators, brokers, Cabot Underwriters' employees and Mr. Musser, through various methods, such as email, mail, and telephone, all from Massachusetts

26. Mr. Sullivan's cell phone number is: 774-292-9345. Mr. Sullivan personally pays for this cell phone number and his cell phone through bills that are sent to him in Massachusetts. Mr. Sullivan's Massachusetts cell phone number (774-292-9345) was, and is still, listed as a telephone number where he can be contacted on Cabot Underwriters' website (http://cabotuw.com/contact.html).

27. Mr. Sullivan received requests from 3rd party administrators or brokers from various parts of the United States, including several from Massachusetts 3rd party administrators or brokers.

28. Cabot Underwriters mailed Mr. Sullivan his yearly W-2, sporadic paystubs, and other similar tax related material to his home in Massachusetts.

29. In early 2016, Mr. Musser travelled to Boston, Massachusetts for a day or so. Mr. Sullivan and Mr. Musser attempted to meet in-person during this trip however their schedules did not align and they did not meet with each other.

30. During Mr. Sullivan's employment, Mr. Musser would schedule conference calls with Cabot Underwriters' employees, which Mr. Sullivan was required to participate in and attend. Mr. Musser would set up these telephone calls and Mr. Sullivan would have to call in from Massachusetts. These conference calls occurred once every couple of weeks or once a month.

31. Mr. Sullivan never travelled to Florida or Connecticut to perform any of his work for Cabot Underwriters; rather, all the work he performed for Cabot Underwriters was from

6

Massachusetts.

32. Commencing on or about April 1, 2016 Cabot Underwriters failed to timely pay Mr. Sullivan all of his earned wages, benefits and compensation, reimburse him for work-related expenses and costs, make and pay appropriate taxes, deductions and withholdings and otherwise failed to timely pay him his full similar compensation, wages and benefits.

33. When Mr. Sullivan complained of his lack of payment, Cabot Underwriters made sporadic wire transfers to Mr. Sullivan equal to his net take home pay after all usual and customary taxes and deductions. When Cabot Underwriters made wire transfers to Mr. Sullivan for payroll purposes, they sent the wire transfers to his account at his bank in Massachusetts.

34. Cabot Underwriters withheld for itself, and did not pay, sums that typically are withheld and paid for federal and state incomes taxes, Mr. Sullivan's portion of Social Security, Medicare and similar deductions.

35. Cabot Underwriters made approximately seven (7) wire transfers to Mr. Sullivan in amounts equal to his net take home pay as described above.

36. Mr. Sullivan incurred a $10.00 charge for each wire transfer payment made by Cabot Underwriters. In total Mr. Sullivan incurred $70.00 in wire transfer fees.

37. Cabot Underwriters wired Mr. Sullivan his net take home pay as described-above for the period from approximately April 1, 2016 through July 15, 2016.

38. Mr. Sullivan incurred a $33.00 over-draft charge related to a late mortgage payment because he did not receive a timely paycheck from Cabot Underwriters.

39. Starting on or about July 15, 2016 Cabot Underwriters stopped paying Mr. Sullivan his earned wages all together although Mr. Sullivan remained employed by, and continued to perform work for, Cabot Underwriters.

40. Mr. Sullivan worked for Cabot Underwriters without receiving his full

wages, compensation and benefits from approximately July 15, 2016 through approximately September 30, 2016 when he ultimately resigned because he was not being paid.

41. During the period from April, 2016 through the present Mr. Sullivan emailed Mr. Musser on numerous occasions regarding not being paid his wages, compensation and benefits and the cancellation of his health insurance. Mr. Musser would respond with excuses as to why Cabot Underwriters had not paid Mr. Sullivan and with assurances that payment and health insurance coverage would be forthcoming; however such full and timely payment and coverage never came. Mr. Musser's emails often included Mr. Trudeau as a recipient. The emails support and demonstrate that Mr. Musser and Mr. Trudeau, control, direct and participate to a substantial degree in formulating and determining the financial policy of Cabot Underwriters. The following is a summary of some, but not all, of the emails sent by Mr. Musser regarding the lack of health insurance coverage and unpaid wages, compensation and benefits:

42. On or about April 22, 2016 Mr. Musser emailed Mr. Sullivan, Mr. Trudeau and other employees and stated in part: "The latest payroll update is that we have a saga, much like we had with Paychex and the health insurance coverage...With that in mind, I'd encourage you to get me some bank account info so that we can wire funds to you, a little later in the day…Please, please, don't be shy about pinging me for the transfer…..I feel badly we've delayed the process this long, and want to make certain you all are in good shape. "

43. On or about April 26, 2016 Mr. Musser emailed Mr. Sullivan and stated in part: "Short answer is because of lack of coordination between providers of working capital and chunkiness of Paychex .......can I leave it at that for now??"

44. On or about July 5, 2016 Mr. Musser emailed Mr. Sullivan, Mr. Trudeau and other employees and stated in part: "Payroll should be out to you all today; funding is ready, and per my email last week I thought we'd have that to you prior to the July 4th holiday, but should be out by mid-day to early afternoon. Had some logistics that we couldn't overcome on Friday........"

45. On or about July 15, 2016 Mr. Musser emailed Mr. Sullivan, Mr. Trudeau and other employees and stated in part: [T]he latest cash infusion will be hitting our account on Monday, and we will be getting payroll amounts out to you on Monday afternoon."

46. On or about July 19, 2016 Mr. Musser emailed Mr. Sullivan, Mr. Trudeau and other employees and stated in part: "Morning, and by now you've probably realized that we didn't make the payroll process yesterday afternoon.....apologies for the continued discontinuity in this process. We're trying to get payroll amounts out to you yet this afternoon, and I'll keep you posted. Thanks again for your patience .....we're close to getting this all fixed."

47. On or about July 19, 2016 Mr. Musser drafted a second email to Mr. Sullivan, Mr. Trudeau and other employees and stated in part: "We didn't get this out today, but we've got a very realistic shot of executing tomorrow. Don [Trudeau] and I are focusing on cash flow and financing tomorrow every first thing. We should have operational cash coming into Cabot by mid to late morning, and I'll turn it around just as quickly as possible ...."

48. On or about July 22, 2016 Mr. Musser emailed Mr. Sullivan stated in part: "Still waiting for cash from the mother ship.......may still be able to turn something around....will let you know if we were able to get something out today."

49. On or about July 28, 2016 Mr. Musser emailed Mr. Sullivan, Mr. Trudeau and

other employees and stated in part: "Don [Trudeau] wasn't able to turn cash for us today, but it will begin to fund in the next couple of business days...Payroll update – So, we missed Monday, and the rest of the week thus far on payroll, but shall have the July 15th payroll to you either tomorrow or Monday at the latest. Payroll Update #2 - we would expect to have the July 31st payroll to you on either Tuesday or Wednesday of next week ...just a matter of turnaround times at this point."

50. On or about or about August 3, 2016 Mr. Musser emailed Mr. Sullivan, Mr. Trudeau and other employees and stated in part: "Most importantly is payroll ........"when are we going to get paid"??!!~#%&$& ......We're fully expecting to turn around the complete July payment amounts, tomorrow, Thursday. Don [Trudeau] felt that we should have had funding today, but alas, did not. We're continuing to chase that for a turnaround tomorrow, and clearly understand that angst, back payments and spousal agita that this has created. We're working to get this cleaned up once and for all."

51. On or about August 5, 2016 Mr. Musser emailed Mr. Sullivan and stated in part: "Hi Steve...cash is moving around today on several fronts as we attempt to catch up...."

52. On or about August 17, 2016 Mr. Musser emailed Mr. Sullivan, Mr. Trudeau and other employees and stated in part: "[W]e fully expect to begin funding/releasing many of our open items, including payroll, yet today ...So, continued thanks for your patience and enduring spirit. We clearly understand mortgage payments, car payments, and all of those types of things and the stress with your families that this has caused, so we're looking to relieve that stress as quickly as possible."

53. On or about August 22, 2016 Mr. Musser emailed Mr. Sullivan, Mr. Trudeau and other employees and stated in part: "Overall cash is beginning to move, firstly from the internal funding that Don [Trudeau] has with TPG. Those funds are moving this week. We're moving

10

towards the loan/line amounts that we have with Bankwell...No B/S, no stringing along, the cash is moving...Payroll amounts will be to you today/tomorrow.......there is no attempt to discount, not pay, flee or avoid any of those amounts."

54. On or about August 26, 2016 Mr. Musser emailed Mr. Sullivan, Mr. Trudeau and other employees and stated in part: "So, the brief story is that Don [Trudeau] is continuing to press for the release of funds for payroll and other expenses, but that may still not happen yet today. We're coming up on the 4:30 end of day wire transfer deadline for today. I know that you all are apoplectic at this point, you've heard this song before, but there is progress that Don [Trudeau] is moving with this tranche of funds. There is a chance for funding to hit yet hit today, but it may not get out to you all this afternoon. Monday is not best estimate, but Don will speak to that."

55. On or about September 5, 2016 Mr. Musser emailed Mr. Sullivan and stated in part: "Don [Trudeau] indicated that funds would begin to move (and this time with certainty) tomorrow, Tuesday. This includes the health premium, payroll amounts, our operational items, and the like. Don [Trudeau] made the commitment over the phone with Dan, Alex, Terri, me & Jess on the call, and his confidence level was high. So, I'm expecting movement of funds...may not take place very first thing, but should be coming mid-day or so."

56. On or about September 9, 2016 Mr. Musser emailed Mr. Sullivan and stated in part: "I'm sorry......I've been after Don [Trudeau] all day, and will let you know something either later today or tomorrow."

57. On or about September 16, 2016 Mr. Musser emailed Mr. Sullivan and stated in part: "So, Don [Trudeau] reports that he'll now have, with complete certainty, his wire transfer/settlement in on Monday of next week. He'll turn it around to us as quickly as he can, and we'll in turn get it out to you..."

58. On or about September 19, 2016 Mr. Musser emailed Mr. Sullivan, Mr. Trudeau and other employees and stated in part: "So, we're still working on coverage to backdate to either 8/1 or 9/1, and Don [Trudeau] is pretty confident that through their national contacts, they can lock this in for us either today or tomorrow."

59. On or about September 22, 2016 Mr. Musser emailed Mr. Sullivan, Mr. Trudeau and other employees and stated in part: "We're continuing to work on a plan for reimbursing your health costs for August & September that should have been covered by the UHC plan. I'll let you know that shortly."

60. On or about October 22, 2016 Mr. Musser emailed Mr. Sullivan and Donald Trudeau and stated in part: "While we won't have prior amounts to you on Monday, we're continuing to work cash and financing, such that we can deliver expense account amounts, and at least one payroll sometime next week. I know that's not definitive, but Don [Trudeau] continues to work on funding from available sources, as well as additional sources."

61. On or about January 17, 2017 Mr. Musser emailed Mr. Sullivan and Mr. Trudeau and stated in part: "W-2 reporting dates must be postmarked by January 31st, which we shall do, and send to your home…Still working on the funding issues, and will keep you posted once we have something locked in and secure."

62. On or about February 9, 2017 Mr. Sullivan was able to access his 2016 W-2 through Paychex, Inc.

63. Mr. Sullivan's 2016 W-2 was incorrectly prepared. Mr. Sullivan's gross wages and withholdings were incorrectly calculated. Mr. Sullivan is due and owed approximately five (5) pay periods of net pay which amounts to approximately $15,387.00 but only approximately three (3) pay periods of taxes, deductions and withholdings which

amounts to approximately $3,267.81.

64. Mr. Trudeau is a co-owner, agent and manager of Cabot Underwriters and he determined which of Cabot Underwriters' creditors, including employees, would be paid.

65. Mr. Musser and Mr. Trudeau oversaw Cabot Underwriters payroll and finances.

66. Mr. Musser and Mr. Trudeau are personally liable under M.G.L. c. 149 § 148 for Cabot Underwriters' failure to properly pay Mr. Sullivan his earned wages, compensation and benefits, non-payment of business costs and expenses, non-payment and coverage of health insurance, non-payment of health care costs and expenses, non-payment of appropriate taxes, deductions and withholdings, and similar non-payment of wages, compensation and benefits.

67. During the summer/fall, 2016 Cabot Underwriters stopped paying Mr. Sullivan's health insurance premiums without any notice or warning. As a result, Mr. Sullivan and his family became uninsured as of August 1, 2016.

68. As a result of being uninsured, Mr. Sullivan incurred approximately $3,492.85 in uninsured medical expenses and costs related to a medical procedure for his wife.

69. Additionally, Cabot Underwriters failed to pay Mr. Sullivan approximately $162.38 in unreimbursed business costs and expenses.

70. Mr. Sullivan has requested that Defendants pay his unpaid wages, benefits and compensation, business costs and expenses, health insurance coverage, reimbursement for healthcare costs and expenses, unpaid taxes, deductions and withholdings, and similar wages, benefits and compensation, but Defendants have not paid him the same.

71. Cabot Underwriters and Mr. Musser have repeatedly promised to pay Mr.

Sullivan his unpaid wages, benefits and compensation, business costs and expenses, health insurance coverage, reimbursement for healthcare costs and expenses, unpaid taxes, deductions and withholdings, and similar wages, benefits and compensation, but they have failed to do so.

72. Mr. Sullivan currently calculates his damages in unpaid, wages, benefits, compensation, uninsured health care costs and expenses, health care expenses, unreimbursed business costs and expenses, unpaid taxes, deductions and withholdings and similar unpaid wages, benefits compensation and damages at approximately $22,413.04.

73. Mr. Sullivan performed work and services for Defendants for which he was not paid his earned wages, benefits and compensation.

74. Mr. Sullivan is due and owed unpaid wages, compensation and benefits, reimbursement of business costs and expenses, reimbursement for non-coverage of health insurance, reimbursement of health care costs and expenses, reimbursement of appropriate taxes, deductions and withholdings, lost wages, and similar unpaid wages, compensation and benefits, and similar reimbursement and payment for damages he suffered.

75. Mr. Sullivan suffered damages in unpaid wages, compensation and benefits, non-payment of business costs and expenses, loss of benefits for non-coverage of health insurance, non-payment of health care costs and expenses, non-payment of appropriate taxes, deductions and withholdings, lost wages, and similar unpaid wages, compensation and benefits, and similar damages.

76. Mr. Sullivan has been damaged in an amount to be proven at trial as a result of Defendants' conduct.

# V. CAUSES OF ACTION

## COUNT I
## NON-PAYMENT OF WAGES IN VIOLATION OF M.G.L. c. 149 §§ 148, 150

77. Mr. Sullivan hereby realleges and incorporates by reference the facts and allegations contained in the preceding paragraphs of this pleading as if fully set forth herein.

78. Cabot Underwriters, Mr. Musser and Mr. Trudeau failed to pay Mr. Sullivan the full amount of his earned wages, benefits and compensation, including without limitation wages, benefits, compensation, health insurance coverage, healthcare costs and expenses, business costs and expenses, appropriate taxes, deductions and withholdings, and similar wages, benefits, compensation, expenses, costs, and amounts, the same became due and payable.

79. Cabot Underwriters, Mr. Musser and Mr. Trudeau violated Massachusetts Wage Laws, the Massachusetts Wage Act, including without limitation, M.G.L. c. 149 §§ 148, 150.

80. Mr. Sullivan filed a complaint with the Massachusetts Attorney General pursuant to M.G.L. c. 149, § 150.

81. Cabot Underwriters, Mr. Musser and Mr. Trudeau's failure to comply with M.G.L. c. 149 §§ 148, 150 entitles Mr. Sullivan to recover treble damages, interest, reasonable attorney's fees and costs pursuant to M.G.L. c. 149 § 150.

82. Mr. Sullivan has been damaged in an amount to be proven at trial as a result of Defendants' conduct.

## COUNT II

## BREACH OF CONTRACT

83. Mr. Sullivan hereby realleges and incorporates by reference the facts and allegations contained in the preceding paragraphs of this pleading as if fully set forth herein.

84. Cabot Underwriters, Mr. Musser and Mr. Trudeau and Mr. Sullivan were parties to a contract under which Cabot Underwriters, Mr. Musser and Mr. Trudeau had a duty and agreed to pay Mr. Sullivan wages, compensation and benefits, including without limitation, wages, benefits, compensation, health insurance, health care costs and expenses, reimbursement for business costs and expenses, withholding and payment of appropriate taxes, deductions and withholdings, and similar wages, benefits, costs, expenses and amounts.

85. Cabot Underwriters, Mr. Musser and Mr. Trudeau breached their contractual duty by failing to pay Mr. Sullivan wages, compensation and benefits, including without limitation, wages, benefits, compensation, health insurance, health care costs and expenses, reimbursement for business costs and expenses, withholding and payment of appropriate taxes, deductions and withholdings, and similar wages, benefits, costs, expenses and amounts, due to him pursuant to the terms of the contract.

86. Cabot Underwriters, Mr. Musser and Mr. Trudeau's breach was material.

87. Cabot Underwriters, Mr. Musser and Mr. Trudeau's breach was both the proximate and actual cause of Mr. Sullivan's damages.

88. Cabot Underwriters, Mr. Musser and Mr. Trudeau's breach of contract entitles Mr. Sullivan to recover his contract damages including but not limited to, incidental and consequential

damages, pre-judgment interest from the date of the breach and such similar damages that Mr. Sullivan suffered.

89. Mr. Sullivan has been damaged in an amount to be proven at trial as a result of Defendants' conduct.

## COUNT III

## UNJUST ENRICHMENT

90. Mr. Sullivan hereby realleges and incorporates by reference the facts and allegations contained in the preceding paragraphs of this pleading as if fully set forth herein.

91. Cabot Underwriters, Mr. Musser and Mr. Trudeau received the benefit of Mr. Sullivan's time, work and professional skill without compensating him for the same.

92. Cabot Underwriters, Mr. Musser and Mr. Trudeau were unjustly enriched by the amount of the unpaid wages, benefits, compensation, including without limitation, wages, benefits, compensation, health insurance, health care costs and expenses, business costs and expenses, withholding of appropriate taxes, deductions and withholdings, and similar wages, benefits, costs, expenses and amounts, as well as any profits they have made as a result of the Mr. Sullivan's work.

93. Mr. Sullivan has been damaged in an amount to be proven at trial as a result of Defendants' conduct.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all claims.

WHEREFORE, Plaintiff respectfully requests that the Court enter the following relief:

1. An award of damages for unpaid earned wages, benefits, compensation and similar amounts due to Plaintiff;

2. An award of damages for unpaid and/or lapsed health insurance coverage;

3. An award of damages for unpaid health care costs and expenses;

4. An award of damages for unreimbursed business costs and expenses;

5. An award of damages for non-payment and/or withheld appropriate taxes, deductions and withholdings;

6. An award of damages for Defendants' breach of contract;

7. An award of damages as a result of Defendants' conduct;

8. Equitable relief and/or disgorgement for the Defendants' unjust enrichment;

9. An award of damages for lost wages;

10. All statutory damages and relief;

11. Statutory trebling of all wage-related damages and such other appropriate amounts;

12. Attorneys' fees and costs;

13. Pre- and post-judgment interest;

14. Any other relief that Plaintiff may be entitled to;

15. Any other relief which this Court deems appropriate; and

16. Any and all other relief which this Court deems equitable and just.

Respectfully,
Stephen Sullivan
By his attorney,


/s/ Maura Greene_____
Maura Greene (BBO #547204)
LAW OFFICE OF MAURA GREENE, LLC
Six Beacon Street, Suite 205
Boston, MA 02108
Tel.   (617) 936-1580
Maura@mauragreenelaw.com

**Dated:**  September 14, 2017




**CERTIFICATION OF SERVICE**

I hereby certify that this document filed through the Court's CM/ECF system on September 14, 2017, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent on this date via first class mail, postage prepaid, to those indicated as non-registered participants.


/s/ Maura Greene_____
Maura Greene

**Dated:**  September 14, 2017